UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:06-cr-55 |
| v. ) | *Judge Mattice* |
| ) | |
| STACEY OLIVER RATCLIFF ) | |

## **MEMORANDUM AND ORDER**

Before the Court is Defendant Stacey Ratcliff's Motion to Suppress Because of Stop [Court Doc. No. 9]. In that motion, Defendant Ratcliff seeks to suppress the evidence obtained during a stop of his vehicle on November 5, 2005, on the grounds that: (1) the arresting officer lacked a reasonably articulable suspicion justifying the stop under *Terry v Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883 (1968) and (2) the arresting officer lacked probable cause for the arrest. *Id.* After considering the evidence offered at the evidentiary hearing, the arguments of counsel and other materials submitted in connection with Defendant Ratcliff's Motion, and for the reasons set forth herein, the Court has determined that said Motion will be **DENIED**.

**I.     RELEVANT FACTS**

An evidentiary hearing was held before the undersigned on Monday, August 14, 2006. Defendant was represented by Attorney Jes Beard. Assistant United States Attorney Steven Neff represented the Government. The only witness testifying at the hearing was Patrolman Larry Posey of the Hamilton County Sheriff's Department. Officer Posey testified as follows.

On the evening of November 5, 2005, at about 8:00 p.m., Officer Posey was driving northbound in the 10900 block of Highway 58 in Hamilton County, Tennessee. At about that time a black 1988 Chevy S-10 pick-up truck passed Officer Posey going north; he immediately fell in behind and began following it. Officer Posey tried to read the registration tag on the truck in order to run a routine check on the status of the tag and the owner. The running of such a routine check is a normal part of Officer Posey's duties.

Due to the interposition of a trailer hitch attached to the rear bumper of the pick-up truck between the tag and Officer Posey's line of vision, Officer Posey was unable to read the first numeral of the tag. As a result, he was unable to provide the necessary information to the radio dispatcher to permit the dispatcher to run a computer check of the tag.

Eventually, by maneuvering slightly to his left and thereby changing his line of sight, Officer Posey was able to make out the entire sequence of letters and numerals on the license tag and was able to run the number through his radio dispatch system. Officer Posey then learned that the license tag was registered to one Stacey Ratcliff. Another Sheriff's deputy who had been listening to the radio traffic, Officer Gienapp, radioed in that Stacey Ratcliff's driver's license might be revoked. At that point, the dispatcher notified Officer Posey via radio that Stacey Ratcliff's driver's license was valid but expired.

In the course of the radio traffic occurring before Officer Posey stopped the Chevy pick-up truck, there was discussion to the effect that there were two Stacey Ratcliffs known to the Hamilton County Sheriff's Department, a father and son. The son was born in 1969, but Officer Posey believed the driver of the Chevy pick-up truck was the father, who was born in 1946. It was the father's license that the dispatcher had indicated was expired.

At this point Officer Posey decided to pull over the Chevy pick-up truck in the 12800 block of Highway 58 (somewhere between approximately one and one half and two miles beyond where Officer Posey had initially sighted Defendant's vehicle) based on probable cause for two separate traffic violations. The first violation related to the fact that a portion of the pick-up truck's license tag had been obscured by the trailer hitch attached to the rear bumper of the truck, thus rendering the tag not clearly visible as required by statute. The second violation was based on the information that the driver's license had expired.

Once the pick-up truck was stopped on the side of Highway 58, Officer Posey walked to the vehicle and asked the driver if he knew that his driver's license was expired. The driver advised that his license was not expired and handed Officer Posey a valid, current license. Officer Posey also asked the Defendant to provide him with evidence of financial responsibility for operation of a motor vehicle as required by Tennessee law, but the Defendant was unable to do so. While standing at the driver's side window of Defendant's vehicle, Officer Posey observed in plain view an open 12-ounce can of Busch beer sitting in the floor board, also a violation of Tennessee law.

Officer Posey then returned to his patrol car and ran through the dispatch check system the driver's license which had been handed to him by Defendant Ratcliff. He also radioed for another patrolman from the Meigs County, Tennessee Sheriff's Department to come to the scene to back him up. Shortly thereafter, Officer Posey learned that the license which the Defendant had handed him was indeed valid, but indicated a different residence address from the license which the dispatcher had previously informed him was expired. It was later determined that there were duplicate records for two different driver's licenses in Defendant's name in the computer records system accessible by the Hamilton

County Sheriff's Department, listing two different residence addresses. This duplication and difference accounted for the earlier mistaken indication regarding the expired status of the Defendant's driver's license.

Once the back-up officer from the Meigs County Sheriff's Department arrived on the scene, Officer Posey walked back to the Defendant's vehicle and asked if he (Officer Posey) could search the vehicle, and the Defendant gave his oral consent. Upon receiving such consent, Officer Posey asked the Defendant to step out of his car and go stand by the Sheriff's patrol car.

Officer Posey then proceeded to search the Defendant's vehicle. In the course of the search he found a loaded Francadia POR .45 caliber pistol under the driver's seat. The gun was in a holster which also held two additional loaded magazines. Officer Posey testified that he had prior knowledge that the Defendant was a convicted felon and therefore that his possession of a firearm and ammunition would be a violation of state and federal law. More specifically, Officer Posey testified that he had had at least one earlier encounter with the Defendant, and knew that he had been engaged in drug trafficking, and had been previously convicted of murder, although such conviction had been overturned on appeal. At that point, Officer Posey arrested the defendant and placed him in custody.

Officer Posey eventually charged the Defendant with the criminal offenses of unlawful possession and/or carrying of a weapon and violation of the Tennessee open container law. In addition, Officer Posey cited the Defendant with the traffic offenses of improper display of a vehicle license tag and violation of Tennessee's financial responsibility law.

On cross examination, and based on a photograph taken of the rear of the Chevy pick-up truck in question subsequent to the events of November 5, 2005, defense counsel attempted to demonstrate that the trailer hitch could not have obscured a numeral on the Defendant's license tag in the manner described by Officer Posey. Notwithstanding such cross examination, Officer Posey persisted in his claim that at the time the events took place, he was unable to ascertain the first numeral on the license tag due to the interposition of the trailer hitch between his line of sight and that numeral. Officer Posey insisted that the photograph depicted a different angle of view from that which had been available to him on the evening in question.

Defense counsel also attempted to suggest that Officer Posey could not have known, based on the information available to him at the time that he made the stop, that it was the Defendant – the individual with respect to which he had received information regarding an expired driver's license – who was actually driving the vehicle on the evening in question. In response, Officer Posey stated that since the vehicle in question was registered to the Defendant, he logically surmised that it was the Defendant who was driving.

The Court found Officer Posey to be a credible witness.

## II.   ANALYSIS

In his instant motion, Defendant Ratcliff contends that Officer Posey lacked a reasonably articulable suspicion justifying the stop of Defendant's vehicle and lacked probable cause for Defendant's arrest. In essence, Defendant argues that the reasons given by Officer Posey for both the stop and his arrest were pretextual. Defendant argues that the real reason for both the stop and the arrest was Officer Posey's knowledge that

the Defendant had been previously convicted of certain crimes and that Officer Posey was looking for any reason to stop the Defendant "even if he had to make it up."

The Government, on the other hand, contends that Officer Posey had at least reasonable suspicion, and most likely probable cause, to stop the Defendant's vehicle on the evening in question, based on Officer Posey's inability to clearly discern all numerals on the Defendant's license tag, as well as upon Officer Posey's good faith belief, at the time of making the stop, that the Defendant was driving on an expired driver's license, albeit it was later shown that Officer Posey's belief in this respect was incorrect. The Court will address in turn each of the proffered grounds for Officer Posey's stop.

Before doing so, however, the Court will determine the appropriate standard against which it will judge Officer Posey's determinations. The U.S. Court of Appeals for the Sixth Circuit announced the test for determining when a traffic stop should be deemed unlawfully pretextual in *United States v. Ferguson*, 8 F.3d 385 (6th Cir. 1993). In that case, as in the one at bar, one of the issues was whether the police officer had probable cause to stop the subject vehicle due to the invisibility of the license plate. In *Ferguson*, the Sixth Circuit, in upholding the search in question, announced that "[w]e hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *Id.* at 391. In determining whether probable cause exists to effectuate a traffic stop, we only examine "whether this particular officer in fact had probable cause to believe that a traffic offense had occurred" and not whether a reasonable police officer would have actually stopped the vehicle. *Id.*

To establish probable cause, the Government must show "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion" that there is a "probability or substantial chance of criminal activity." *Id.* at 392. When analyzing whether a traffic stop is reasonable, the Court must undertake "an objective assessment of [the] officer's actions in light of the facts and circumstances then known to him." *Id.* at 388 (quoting *Scott v. United States*, 436 U.S. 128, 137, 98 S.Ct. 1717, 1723 (1978)). "[T]his probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew *at the time he made the stop*." *Id.* at 391.

This, then, is the test the Court will employ in analyzing whether Officer Posey had probable cause to believe: (1) that the registration tag on Defendant's vehicle on the evening in question was not clearly visible in violation of Tenn. Code Ann. § 55-4-110(b), and (2) that the Defendant, on the evening in question, was driving on an expired license in violation of Tenn. Code Ann. § 55-50-351.

### A. Registration Tag Not Clearly Visible

Tennessee Code Annotated § 55-4-110(b) provides, in pertinent part, that "[e]very registration plate shall at all times be . . . in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible."

In the case of *Tennessee v. Matthews*, No. M200100754CCAR3DC, 2002 WL 31014842 (Tenn. Crim. App. Sept. 10, 2002), the Tennessee Court of Criminal Appeals had occasion to interpret this statute in the context of a review of the trial court's denial of a motion to suppress on the grounds that an officer's stop of the subject vehicle occurring at approximately 7:07 p.m. on September 18, 1999, was unreasonable where the officer

complained that the stopped vehicle had no light over the license tag and as a result the officer was unable to see whether the car had a license plate. The parties stipulated that the vehicle in question had a light over the license plate which came on when the headlights were turned on, but that at the time of the stop the lights were not on. *Id.* at *1.

The court in *Matthews* concluded that, while Tennessee law did not require headlights to be on at the time of the stop in question, Tenn. Code Ann. § 55-4-110(b) required that a vehicle's license plate be *clearly* visible at *all* times. *Id.* at *3. The court observed:

> Even if the legislature intended as a general rule not to require the display of headlights until a half hour following sunset, it also intended that vehicle license plates be clearly visible at all times. By failing to keep his license plates visible during the half hour following sunset the appellant gave Officer Placone more than sufficient reason to effectuate a stop of the appellant's vehicle. As stipulated by the parties, in an American automobile the license plate light is activated by turning on the headlights. This unfortunate design feature in the appellant's vehicle does not excuse his failure to keep his license plate illuminated so as to keep it clearly visible.

*Id.*

The *Matthews* case was recently cited by the United States Court of Appeals for the Sixth Circuit in its decision in *United States v. Dycus*, 151 F. App'x 457 (6th Cir. 2005). In that case, the court had another opportunity to determine whether a police officer had probable cause to stop a vehicle based on violation of Tenn. Code Ann. § 55-4-110(b). In *Dycus*, the Court upheld the validity of the traffic stop because the officers had probable cause to believe that the defendant had violated § 55-4-110(b) where the police officer testified that upon the commencement of their pursuit of defendant's vehicle they could not

make out the registration plate due to darkness, although they conceded that they could see the tag as illuminated by the emergency blue lights on their patrol car once they pulled within fifteen to twenty yards of defendant's vehicle. *Id.* at 461.

Taken together, the Court concludes that the teaching of *Matthews* and *Dycus* is that § 55-4-110(b) imposes on the driver of a vehicle on Tennessee roads an obligation to ensure that the registration tag on the vehicle is clearly visible at *all* times, and that *any* invisibility or obstruction to visibility of any portion of the tag could constitute a violation of the statute, even if such invisibility or obstruction to visibility is temporary – or even momentary – and may be easily cured, as by the turning on of headlights or by a slight change in distance or the position of the vehicle in relation to the observer.

Under this standard, it is clear that the placement of the trailer hitch on the rear of Defendant Ratcliff's vehicle, albeit legal, and the interposition of that trailer hitch between a numeral on the registration plate and Officer Posey's line of sight on the evening in question, however momentary, was enough to permit Officer Posey to conclude that the Defendant was violating, or had violated, Tenn. Code Ann. § 55-4-110(b). The Court concludes, therefore, that Officer Posey possessed the requisite probable cause to stop Defendant's vehicle on this basis.

### B. Driving on Expired License

Officer Posey also testified that after he began following the Defendant's vehicle on the evening in question, but before he initiated the traffic stop, he received information from the dispatcher at the Hamilton County Sheriff's Department that Defendant's driver's license had expired. After making the stop and having received and checked the

Defendant's actual license, Officer Posey was able to determine that, due to a change in Defendant's address and duplicative inconsistent entries relating to Defendant's license in the computer files accessible by the Sheriff's Department, his initial information regarding the expired status of Defendant's driver's license was incorrect.

Nevertheless, and as noted above, the appropriate test for evaluating whether Officer Posey's determination that Defendant was driving on an expired license in violation of Tenn. Code Ann. § 55-50-351 was objectively reasonable is what Officer Posey knew at the time he made the stop. *Ferguson*, 8 F.3d at 391. In doing so, the Court must make "an objective assessment of [the] officer's actions in light of the facts and circumstances then known to him." *Id.* at 388.

In *Arizona v. Evans*, 514 U.S. 1, 115 S. Ct. 1185 (1995), the U.S. Supreme Court made clear that the exclusionary rule does not require the suppression of evidence seized incident to an arrest pursuant to a traffic stop resulting from an inaccurate computer record utilized by the law enforcement officer or agency. In addition, the U.S. Court of Appeals for the Sixth Circuit has held that "[t]he establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Moncivais*, 401 F.3d 751, 756 (6th Cir. 2005) (internal quotation marks and citation omitted).

In the case at bar, the fact that the information regarding the status of Defendant's driver's license on which Officer Posey relied in good faith in making the stop was ultimately shown to be erroneous in no way vitiates the probable cause for, or the validity of, the stop. Accordingly, the Court concludes that Officer Posey also possessed the


requisite probable cause to stop the Defendant's vehicle on the evening in question on this basis.

### C. The Search and Seizure

Having determined that Officer Posey possessed the requisite probable cause to stop Defendant Ratcliff's on the evening in question on two separate and independent grounds, the Court will next consider whether the ensuing search of Defendant's vehicle, the seizure of a firearm from such vehicle, and Defendant's resulting arrest were lawful.

Officer Posey testified that when he approached Defendant's vehicle after making the stop, and while standing at the open driver's side window while asking to see Defendant's driver's license, he observed an open, 12-ounce can of Busch beer sitting on the floor board of the vehicle in plain view. Tennessee Code Annotated § 55-10-416 makes it unlawful to possess an open container of alcoholic beverage or beer while operating a motor vehicle in Tennessee. Violation of the open container law is a class C misdemeanor.

There is no indication in the record that Officer Posey informed the Defendant of his observation of the open beer can at that point. Instead, Officer Posey testified that he next asked the Defendant for permission to search his vehicle, and that Defendant gave his oral consent to the search. Officer Posey testified that in conducting his search he found a loaded handgun and spare ammunition under the driver's seat. Possessing prior knowledge that the Defendant was a convicted felon, Officer Posey then placed Defendant under arrest for violation of Tenn. Code Ann. § 39-17-1307, a Class E felony.[1]

---

[1] Defendant's alleged possession of a firearm also exposed him to liability under 18 U.S.C. § 922(g)(1), the statute under which he is charged in the case at bar.

Defendant apparently does not contest either his consent to the search of his vehicle or the scope thereof. Accordingly, the Court will not dwell on this aspect of the encounter other than to observe that under the doctrine announced by the U.S. Supreme Court in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041 (1973), a vehicle search performed after a voluntary consent of the Defendant does not implicate Fourth Amendment concerns. Accordingly, the Court concludes that Officer Posey's search of Defendant's vehicle and the resulting seizure of the discovered handgun and ammunition were reasonable within the meaning of the Fourth Amendment.

### III. CONCLUSION

Considering all the evidence presented in connection with Defendant's instant motion as a whole, and based on the totality of the circumstances, the Court concludes that the subject stop of Defendant's vehicle on the evening of November 5, 2005, was supported by probable cause, that the ensuing search of Defendant's vehicle and the seizure of the subject evidence therefrom were reasonable within the meaning of the Fourth Amendment to the United States Constitution, and that Defendant's resulting arrest was similarly supported by probable cause. Accordingly, and for the reasons set forth herein, Defendant's Motion to Suppress Because of Stop [Court Doc. No. 9] is **DENIED**.

SO ORDERED this 25th day of September, 2006.

    *s/ Harry S. Mattice, Jr.*
    HARRY S. MATTICE, JR.
    UNITED STATES DISTRICT JUDGE